70 F.3d 1261
 76 A.F.T.R.2d 95-7815
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles E. HURT; Carolyn Hurt, Plaintiffs-Appellees,
v.
UNITED STATES of America, Defendant-Appellant,
and
COMMISSIONER OF THE INTERNAL REVENUE SERVICE, Defendant.
Charles E. HURT; Carolyn Hurt, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee,
and
COMMISSIONER OF THE INTERNAL REVENUE SERVICE, Defendant.
 Nos. 95-1065, 95-1029.
 United States Court of Appeals, Fourth Circuit.
 Argued: October 31, 1995.
Decided: November 30, 1995.
 
 ARGUED: Bruce Raleigh Ellisen, Tax Division, United States Department of Justice, Washington, DC, for Appellant. Charles Edward Hurt, Charleston, WV, for Appellees. ON BRIEF: Loretta C. Argrett, Assistant Attorney General, Gary R. Allen, Paula K. Speck, Rebecca Aline Betts, United States Attorney, Tax Division, United States Department of Justice, Washington, DC, for Appellant.
 OPINION
 Before HAMILTON, MICHAEL, and MOTZ, Circuit Judges.
 HAMILTON, Circuit Judge:
 
 
 1
 This appeal arises out of an income tax dispute for the 1986 tax year between the Appellees/Cross-Appellants, Charles and Carolyn Hurt (the Hurts), and the United States Internal Revenue Service (the IRS or the government). After the parties had entered into a settlement agreement, settling the total amount of the Hurts' liability for the 1986 tax year at $30,761.93, the IRS sought to collect an additional $17,241.19 in statutory interest on the settled amount pursuant to 26 U.S.C.A. (I.R.C.) Sec. 6601(a) (West Supp.1995). The Hurts paid the statutory interest under protest and filed a refund suit in the district court. Concluding the settlement agreement contractually precluded the government from collecting the $17,241.19 in statutory interest, the district court granted summary judgment in favor of the Hurts. The government appeals, contending the district court erred in concluding the settlement agreement contractually precluded it from collecting statutory interest. The Hurts cross-appeal the district court's denial of their motion for attorney's fees under I.R.C. Sec. 7430(a) (West 1989). We now affirm the district court in all respects.
 
 I.
 
 2
 On March 2, 1991, the IRS issued the Hurts a notice of income tax deficiency for the 1986 tax year. The notice of deficiency asserted that the Hurts owed: (1) $36,267.44 in additional income tax for 1986; (2) $2,299.55 as a negligence penalty under I.R.C. Sec. 6653(a)(1)(A) (West 1989); (3) $11,286.82 as an understatement penalty under I.R.C. Sec. 6661 (West 1989); and (4) an amount equal to fifty-percent of the interest payable on $45,990.44 as a negligence penalty under I.R.C. Sec. 6653(a)(1)(B) (West 1989). Among the items asserted by the IRS as giving rise to this deficiency were a decrease in the rental loss and an increase in the capital gain attributable to a condominium on Kiawah Island, South Carolina, a gain on the casualty loss of an automobile, and an increase in income subject to self-employment tax.
 
 
 3
 The Hurts, acting pro se,[1] challenged the petition in the United States Tax Court. Settlement negotiations ensued, resulting in a signed settlement agreement between the parties, entitled "Stipulation of Settled Issues" (the Settlement Agreement). In the Settlement Agreement: (1) the Hurts conceded the rental loss claimed on the Kiawah Island condominium; (2) a value was set for the condominium as well as the property received in exchange, and a deferral of the gain was allowed; (3) a figure was set for the automobile casualty loss; (4) the IRS conceded an adjustment to partnership income; (5) the Hurts conceded the negligence penalty under I.R.C. Sec. 6653(a)(1)(A) (West 1989); (6) fifty-percent of the adjustments to income and to capital gains was to be used for the purpose of calculating the negligence penalty under I.R.C. Sec. 6653(a)(1)(B) (West 1989); and (7) fifty-percent of the adjustments to partnership income and capital gains was to be used to calculate the I.R.C. Sec. 6661 (West 1989) penalty for understatement of income. The Settlement Agreement did not specifically address statutory interest.
 
 
 4
 The parties then used the stipulated adjustments to determine the amount of the Hurts' income tax deficiency and the amounts of the various penalties. The parties having set forth the amount of the Hurts' income tax deficiency and the amounts of the various penalties in a second signed stipulation agreement, dated June 8, 1992, the Tax Court adopted the agreement as its decision on June 12, 1992 (the Stipulated Decision). The Stipulated Decision provided for (1) an income tax deficiency of $20,217.52; (2) an I.R.C. Sec. 6653(a)(1)(A) (West 1989) negligence penalty of $1,497.03; (3) an I.R.C. Sec. 6661 (West 1989) understatement of income penalty of $3,637.50; and (4) an I.R.C. Sec. 6653(a)(1)(B) (West 1989) negligence penalty "in the amount of 50% of the interest due on $14,970.26." (J.A. 15). Like the Settlement Agreement, the Stipulated Decision did not specifically address statutory interest.
 
 
 5
 Subsequently, the IRS sought to collect the agreed upon amounts, which totalled $30,761.93, as well as $17,241.19 in statutory interest under I.R.C. Sec. 6601(a) (West Supp.1995),[2] which interest was not specifically mentioned in either the Settlement Agreement or the Stipulated Decision. While the Hurts paid the full amount the IRS sought to collect, they paid the portion constituting statutory interest under protest. Next, the Hurts filed an administrative claim with the IRS for a refund of the $17,241.19, asserting the Settlement Agreement and Stipulated Decision had relieved them of liability for statutory interest. Rejecting this ground, the IRS denied the Hurts' administrative claim on September 24, 1993. The Hurts then instituted this refund suit in federal district court, alleging the government had waived its right to collect statutory interest by entering the Settlement Agreement and Stipulated Decision.
 
 
 6
 The government moved to dismiss the refund suit pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging the Settlement Agreement and Stipulated Decision did not relieve the Hurts of liability for statutory interest. In support of its allegation, the government attached the declaration of John A. Freeman, the IRS attorney who negotiated the settlement, stating that he and Charles Hurt did not discuss or negotiate the statutory interest due under I.R.C. Sec. 6601(a) (West Supp.1995). The Hurts then moved for summary judgment. Attached to their motion was an affidavit of Charles Hurt directly disputing the IRS attorney's version of the settlement negotiations.
 
 
 7
 On February 24, 1994, the district court denied the Hurts' motion for summary judgment, and treating the government's Rule 12(b)(6) motion as one for summary judgment, denied it also. The district court then set the case for trial, and the parties submitted a pretrial order. On the trial date, the district court held a hearing, resulting in its granting summary judgment in favor of the Hurts. The Hurts then moved for reimbursement of their attorney's fees under I.R.C. Sec. 7430(a) (West 1989). The district court denied the motion on the ground that pro se litigants may not collect attorney's fees under I.R.C. Sec. 7430(a) (West 1989).
 
 
 8
 The government appeals the district court's granting of summary judgment in favor of the Hurts, and the Hurts cross-appeal the district court's denial of their motion for attorney's fees.
 
 II.
 
 9
 The principal question we face here is whether the district court erred in concluding the Settlement Agreement and the Stipulated Decision contractually precluded the government from collecting $17,241.19 in statutory interest from the Hurts for the 1986 tax year. We review the district court's grant of summary judgment de novo, applying the same standard that the district court was required to apply for granting the motion. See Thompson Everett, Inc. v. National Cable Advertising, L.P., 57 F.3d 1317, 1323 (4th Cir.1995). To prevail on a motion for summary judgment, the Hurts must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) they are entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact has been raised, we must construe all inferences in favor of the party opposing the motion. See id. 257-58.
 
 
 10
 At bottom, the parties dispute the legal effect of the Settlement Agreement and Stipulated Decision's silence with respect to the Hurts' liability for statutory interest. The government contends the silence requires us to hold that the parties did not settle the issue of the Hurts' liability for statutory interest. The Hurts contend that given the nature and purpose of a settlement agreement, the silence means the government agreed to waive liability for statutory interest.
 
 
 11
 In resolving this dispute, we must employ the general principles of contract interpretation, because a settlement agreement is a contract between the settling parties. See United States v. ITT Continental Baking, Co., 420 U.S. 223, 238 (1975); Byrum v. Bear Inv. Co., 936 F.2d 173, 175 (4th Cir.1991). Accordingly, our ultimate duty is to ascertain the meaning and intent of the parties as expressed in the language utilized. See Sand Filtration Corp. v. Cowardin, 213 U.S. 360 (1909). If the meaning of a contract is unambiguous, then the intent of the parties is a question of law solely for the court and should be determined only by looking within the four corners of the document. See Nehi Bottling Co. v. All-American Bottling Corp., 8 F.3d 157, 162 (4th Cir.1993). However, if the contract is ambiguous, then the trier of fact may look beyond the four corners of the document and consider extrinsic evidence. Id. The existence of ambiguity in a contract must be determined by the court as a matter of law. Id. at 161-62. With these principles in mind, we turn to the documents at issue.
 
 
 12
 Here, the settlement negotiations resulted in the parties entering two agreements. The first agreement was the Settlement Agreement, which set forth the agreed upon details necessary to determine the ultimate amounts of liability. These ultimate amounts of liability were then set forth in the Stipulated Decision. Neither document contains any language specifically addressing statutory interest under I.R.C. Sec. 6601(a) (West Supp.1995). While under certain circumstances a party may settle one claim without relinquishing another, specific language to this effect must be utilized or it must be clear from an examination nation of the agreement that the parties only intended to settle a particular claim. See Garrett v. Heisler, 253 S.E.2d 863, 865 (Ga.Ct.App.1979).
 
 
 13
 In our view, the language employed in the first sentence of the Settlement Agreement and the first sentence of the Stipulated Decision plainly evidences the IRS's intent to waive the Hurts' liability for statutory interest by entering into these agreements. The first sentence of the Settlement Agreement provides: "THE PARTIES stipulate that the issues in this case have been settled as follows:...." (J.A. 13). The first sentence of the Stipulated Decision provides: "Pursuant to the agreement of the parties in the above-entitled case, it is ORDERED AND DECIDED:.... " (J.A. 15). Critically, neither agreement excepted the issue of the Hurts' liability for statutory interest from its all encompassing language. Because neither agreement provided that the Hurts would be liable for statutory interest on the settled income tax deficiency and penalties for the 1986 tax year, we conclude the government waived its right to subsequently collect this interest. See Garrett, 253 S.E.2d at 865.
 
 
 14
 Our conclusion is fully consistent with the general rules of compromise and settlement. First, the purpose of a settlement agreement between parties to a lawsuit is to put an end to litigation. See Richardson v. Richardson, 392 S.E.2d 688, 692 (Va.Ct.App.1990). And second, a valid settlement agreement merges all antecedent claims directly tied to the settled dispute and bars a later attempt to recover on antecedent claims. See, e.g., Sylvester v. Animal Emergency Clinic, 825 P.2d 1053, 1058 (Haw.1992); In re Estate of Engels, 692 P.2d 400, 402 (Kan.Ct.App.1984); State ex rel. Derryberry v. Kerr-McGee Corp., 516 P.2d 813, 821 (Okla.1973); Beauchamp v. Clark, 108 S.E.2d 535, 539-40 (N.C.1959). In light of the plain language of the Settlement Agreement and Stipulated Decision, we have no doubt the parties in this case intended to put an end to the pending litigation and intended to merge all antecedent claims.[3]
 
 III.
 
 15
 Concluding the IRS waived its right to collect statutory interest under I.R.C. Sec. 6601(a) (West Supp.1995) by entering into the Settlement Agreement and Stipulated Decision with the Hurts, we affirm the judgment of the district court.[4]
 
 AFFIRMED
 DIANA GRIBBON MOTZ, Circuit Judge, dissenting:
 
 16
 I respectfully dissent.
 
 
 17
 The Internal Revenue Code unequivocally provides that interest "shall be paid" on taxes the taxpayer has failed to pay. 26 U.S.C. Sec. 6601(a). The Hurts have conceded that they failed to pay some taxes; thus, the United States is statutorily entitled to interest on those taxes. Undoubtedly, in order to settle this or any other case, the United States may waive its right to interest. But, in view of the clarity of the statutory right to interest, the sovereignty of the United States, and the importance of revenues to the functioning of government, it seems to me that any waiver of this right must be based on clear evidence that the government intended to waive statutory interest. In this case, the written documents evidencing the settlement do not unambiguously indicate the government waived its right to the interest. For this reason, I believe the district court erred in granting summary judgment to the Hurts.
 
 
 18
 First, as the majority recognizes, neither the Stipulation of Settled Issues nor the Tax Court's decision contains an express waiver of statutory interest. See slip op. at 6 ("[n]either document contains any language specifically addressing statutory interest").
 
 
 19
 Nor is it possible to find that a waiver of statutory interest is clearly implied by either document. The language most heavily relied on by the Hurts as indicating a waiver is contained in the first sentence of the Stipulation:
 
 
 20
 The parties stipulate that the issues in this case have been settled as follows....
 
 
 21
 The Hurts maintain that interest was one of "the issues in this case" and the government's failure to provide for interest must mean that none is due. The government, however, asserts that because the Tax Court has no jurisdiction to assess the interest at issue here, see Commissioner v. McCoy, 484 U.S. 3, 7 (1987), the "issues" in this case could not include the issue of whether or not interest would be assessed. The fact that both of these positions are reasonable and consistent with the language of the Stipulation demonstrates that the Stipulation is at the very least ambiguous on this point.
 
 
 22
 The Stipulation is similar to a closing agreement. See 26 U.S.C. Sec. 7121. Two of our sister circuits, interpreting closing agreements that similarly failed to mention interest, concluded that the agreements did not preclude the IRS from asserting its right to statutory interest. See In re Spendthrift Farm, Inc., 931 F.2d 405, 407 (9th Cir.1991); Smith v. United States, 850 F.2d 242, 245 (5th Cir.1988). Those courts held that because interest is a statutory right, and because closing agreements generally do not determine interest, in order for a closing agreement to eliminate the government's right to interest, "there must be a specific waiver in the closing agreement." Spendthrift, 931 F.2d at 407. Absent such an express waiver, the IRS claim for interest is not "cut off." Id.; see also Smith, 850 F.2d at 245.
 
 
 23
 Of course, the Stipulation is not a closing agreement. While the IRS still has a statutory right to interest, there is no "usual" practice to rely on as to what would or would not be contained in the Stipulation. Accordingly, though the government argues to the contrary, I do not think the Stipulation can be read as unambiguously reserving the government's right to assess interest. However, because closing agreements usually do not determine interest, and because this Stipulation accomplishes the same purpose as a closing agreement, there is some weight to the government's argument that assessment of interest was not one of the "issues" that the parties intended to resolve in the Stipulation.
 
 
 24
 The only other court to consider this question in the context of a similar agreement concluded, as I would, that the agreement was ambiguous. See Anthony v. United States, 987 F.2d 670, 673 (10th Cir.1993). In Anthony, as here, the taxpayer and IRS settled their dispute by executing a "stipulated decision" rather than a "closing agreement." Id. Again, as here, the stipulation in Anthony contained no express provision governing interest although it did contain a sentence similar (but arguably even more helpful to the taxpayers) to the first sentence of the Stipulation in this case. That sentence provided:
 
 
 25
 It is further stipulated that this agreement constitutes a final civil settlement of taxes due for the years in issue.
 
 
 26
 Id. at 672. The district court in Anthony held, as the majority does here, that the stipulation unambiguously eliminated the government's right to assess interest. Anthony v. United States, 765 F.Supp. 656, 657 (D.Colo.1991). On appeal, the Tenth Circuit rejected that conclusion, holding that the stipulation was ambiguous and therefore required the court to examine extrinsic evidence of the intentions of the parties. Anthony, 987 F.2d at 673. Only because the "uncontroverted evidence show[ed] that the IRS assured the Anthonys that the settlement covered all civil liability" did the Tenth Circuit affirm the district court's grant of summary judgment to the taxpayers. Id.
 
 
 27
 Here, in contrast to Anthony, the evidence as to the parties' intentions could not be more controverted. The government attorney who negotiated the Stipulation with Mr. Hurt asserted in an affidavit that the parties "did not discuss or negotiate the issue of interest," explaining that he "knew that the Tax Court would not accept a Stipulation of Settled Issues nor enter a Decision which provided for the nonpayment of interest, since the subject of interest is not within its jurisdiction." In response, Mr. Hurt asserted in his affidavit that he personally "negotiated a settlement of all issues ... including ... what interest, if any, should be involved," and that the government agreed that "no interest would be assessed." A factfinder may find Mr. Hurt more credible. However, we cannot, as a matter of law, so conclude.
 
 
 28
 I would reverse and remand to the district court so that it could determine the meaning of the ambiguous Stipulation after ascertaining the intention of the parties.
 
 
 
 [1]
 Charles Hurt is an attorney
 
 
 [2]
 I.R.C. Sec. 6601(a) (West Supp.1995) provides "[i]f any amount of tax imposed by this title (whether required to be shown on a return, or to be paid by stamp or by some other method) is not paid on or before the last date prescribed for payment, interest on such amount at the underpayment rate established under section 6621 shall be paid for the period from such last date to the last date paid."
 
 
 [3]
 We reject as nonsensical the government's argument that the settlement did not cover statutory interest because with certain narrow exceptions not applicable here, the Tax Court does not have jurisdiction to decide a taxpayer's liability with respect to statutory interest. The signed agreements between the parties were clearly meant to settle all issues in dispute with respect to the 1986 tax year, not merely the matter as pending before the Tax Court
 
 
 [4]
 The Hurts cross-appeal the district court's denial of their motion for attorney's fees under I.R.C. Sec. 7430(a) (West 1989). Stare decisis renders the Hurts' cross-appeal completely without merit. In United States v. McPherson, 840 F.2d 244 (4th Cir.1988), we held that an attorney appearing pro se is not entitled to attorney fees under I.R.C. Sec. 7430(a) (West 1989)