In the Matter of MANSFIELD & TIRE RUBBER COMPANY, INC., Debtor.

In the Matter of PENNSYLVANIA TIRE & RUBBER COMPANY OF MISSISSIPPI, INC., Debtor.

In the Matter of PENNSYLVANIA TIRE COMPANY, INC.

Bankruptcy Nos. 679–01238, 679–01239 and 679–01333.

United States Bankruptcy Court, N.D. Ohio.

March 26, 1987.

---

James DeWeese, Richland County Asst. Pros. Atty., Mansfield, Ohio, for Richland County Treasurer.

H. Jeffrey Schwartzberg, Benesch, Friedlander, Coplan & Aronoff, Cleveland, Ohio, and David L. Simiele, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., Canton, Ohio, for the co-distribution assets trustees.

## MEMORANDUM OF DECISION RE: MOTIONS FOR SUMMARY JUDGMENT—RICHLAND COUNTY TAX CLAIMS

JAMES H. WILLIAMS, Bankruptcy Judge.

The Richland County Treasurer (Treasurer) has requested the court to allow immediate payment of $108,824.67 in pre-petition personal property taxes and penalties as a priority claim and $495,863.03 in post-petition real and personal property taxes as administrative expenses. The Chapter 11 Co-Distribution Assets Trustees (Trustees) have opposed the Treasurer's requests, filing objections to the Treasurer's proofs of claim and requests for payment, and have moved for summary judgment on several of the issues.

The salient facts follow. On October 1, 1979, voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code were filed on behalf of The Mansfield Tire & Rubber Company, Inc. (Mansfield Tire), The Pennsylvania Tire & Rubber Company of Mississippi, Inc. (Penn-Miss) and The Pennsylvania Tire Company (Penn-Ohio), hereinafter collectively referred to as the Mansfield Estates. A short time thereafter, on November 7, 1979, the Trea-

surer filed a $98,804.93 priority claim in the Mansfield Tire case and a $126.58 priority claim in the Penn-Miss case for 1979 personal property taxes. The next day, the Treasurer amended his claims to include penalties, resulting in a total alleged priority liability in Mansfield Tire and Penn-Miss of $108,685.92 and $139.24, respectively. The court subsequently set March 30, 1984 as the last date for filing proofs of claim. On April 6, 1984, the Treasurer filed a proof of claim for delinquent real estate taxes in the amount of $304,411.63. The document claimed priority status and stated "1984 taxes are lien and undetermined." All of the claims filed on behalf of the Treasurer were executed by individuals in the Treasurer's office and listed the county courthouse as his address.

A consolidated liquidating Chapter 11 Plan was submitted by the Mansfield Estates to the creditors for approval in the fall of 1985. The Treasurer voted in favor of the Plan, filing a ballot for delinquent real estate taxes as a Class 1 administrative expense creditor. The Plan was confirmed and by order entered December 30, 1985 the court set February 15, 1986 as the final date for filing applications for allowance of administrative expenses. Upon oral motion of the Trustees, the court extended this administrative expense bar date until March 1, 1986. On January 24, 1986, the court sent notice to all creditors indicating that the Plan had been confirmed and further directed:

... March 1, 1986 is fixed as the final day for the filing of all administrative claims including the actual, necessary costs and expenses of preserving of the estate, including wages, salaries or commissions for services rendered after the commencement of these cases, or such claims shall be forever barred.

On August 12, 1986 the Treasurer filed two requests for payment. The first seeks immediate payment of the 1979 personal property taxes and penalties as a priority claim. The second request for payment seeks distribution of $495,863.03 in real and personal property taxes for 1979 through 1984 as administrative expenses. Subsequent submissions by the Treasurer reveal the nature and amount of his claims to be as follows:

| Type of Tax | Taxes & Assessments | Penalties | Interest |
| --- | --- | --- | --- |
| Pre-petition personal property taxes | $ 98,931.51 | $ 9,893.16 | $      .00 |
| Post-petition personal property taxes | $ 25,460.21 | $ 2,545.93 | $    289.31 |
| Post-petition real property taxes [1] | $259,488.74 | $31,425.07 | $105,059.37 |

The Trustees responded, objecting to the April 6, 1984 proof of claim and the August 12, 1986 request for payment of an administrative expense as untimely, and moved for summary judgment. The Trustees then filed objections to all of the Treasurer's claims. The Trustees asserted that the original November 7, 1979 claims were superseded by later claims and that the April 6, 1984 proof of claim was "[u]nsupported by Financial Books and Records-Funded." Also contained in the Trustees' objection was a reference to the amended pre-petition claims with the notation "PP INT PENNALTT." A response was filed by the Treasurer who moved for consolidation of the issues on the post-petition taxes and sought leave to file a request for payment

1. Subsequent to the filing of the Treasurer's request for payment, taxes and penalties attributable to one of the parcels was paid by the purchaser of that parcel. These figures reflect those payments.

as an administrative expense in the event that the Trustees' objections were sustained.

## DISCUSSION

### A

### PROOF OF CLAIM

■ The Trustees have objected to the April 6, 1984 proof of claim as being untimely filed and have moved for summary judgment. However, the parties agree that an even more fundamental problem exists. It is undisputed that the April 6, 1984 proof of claim pertains only to post-petition liabilities and that post-petition claims are not to be filed as a proof of claim. Section 501(a) of the Bankruptcy Code provides "[A] creditor or indenture Trustee may file a proof of claim." Creditor is defined in Section 101(9) of the Bankruptcy Code as follows:

"creditor" means—

(A) entity that has a claim against the debtor *that arose at the time of or before the order for relief* concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this title; or

(C) entity that has a community claim.

(Emphasis added). Clearly, the Treasurer does not qualify as a creditor with regard to *post-petition* taxes for the purpose of filing a proof of claim. A request for payment under Section 503 of the Bankruptcy Code is the appropriate vehicle by which a post-petition creditor may pursue its claim against an estate. Accordingly, the Treasurer's April 6, 1984 proof of claim will be disallowed, *as a proof of claim.*

### B

### REQUEST FOR PAYMENT

The Treasurer has filed two requests for payment. The first deals with the November 8, 1979 amended proofs of claim for pre-petition personal property taxes. The Treasurer asserts that the taxes and penalties are entitled to priority status. He re-lies on Section 507(a)(7)(G) of the Bankruptcy Code to support his allegation that the penalties imposed upon a Section 507(a)(7) priority claim enjoy the same status as the tax claim. *Compare, In re Unimet Corporation,* 74 B.R. 156 (Bankr.N.D.Ohio, 1987) (holding that pre-petition interest accrued on priority taxes enjoys the same status as the tax claim). The Trustees, as noted previously, have objected to these claims, although no motion for summary judgment or memorandum in support of their objection has been submitted.

The second request involves payment of post-petition real and personal property taxes. The thrust of the Trustees' objection is that the application is untimely and that no excusable neglect has been demonstrated to permit leave to ′ file. On the other hand, the Treasurer alleges that the tax bills sent to the Trustees, the ballot accepting the plan and the April 6, 1984 proof of claim, each constitute a timely request for payment. The Treasurer analogizes the situation to cases involving informal proofs of claim and urges the court to adopt a similar rationale for requests for payment of administrative expenses.

Proofs of claim and requests for payment of administrative expenses are similar in that both assert a liability against the bankruptcy estate. However, they are distinguishable in several respects. A proof of claim is prima facie evidence of the nature and the amount of the debt and is deemed allowed unless objected to by a party in interest. Bankruptcy Rule 3001(f); 11 U.S.C. § 502(a). Conversely, allowance of a claim as an administrative expense is subject to court approval only after notice and a hearing. 11 U.S.C. § 503. The Bankruptcy Rules outline in detail the form, content and execution of a proof of claim, along with a time, place and manner of filing. Bankruptcy Rules 3001, 3002. While the legislative history of Section 503 of the Bankruptcy Code states that the Bankruptcy Rules will also specify the time, form and method of filing requests for payment of administrative expenses, no such rule has as yet been promulgated.

*See,* S.Rep. No. 989, 95th Cong.2d Sess. 66; *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5852; H.R.Rep. No. 595, 95th Cong. 1st Sess. 355; *reprinted in* 1978 U.S.Code Cong. & Ad.News 6311.

Case law has relaxed somewhat the rules established for the assertion of claims. Courts have found that documents, other than formal proofs of claim, may constitute informal proofs of claim, capable of amendment. *See In re Franciscan Vineyards, Inc.,* 597 F.2d 181 (9th Cir.1979) (per curiam), cert. denied, 445 U.S. 915, 100 S.Ct. 1274, 63 L.Ed.2d 598 (1980); *In re Sambo's Restaurants,* 754 F.2d 811 (9th Cir.1985); *In re Evanston Motors, Inc.,* 735 F.2d 1029 (7th Cir.1984). Courts agree that to comprise an informal proof of claim the document or documents "must state an explicit demand showing the nature and amount of the claim against the estate and evidence an intent to hold the debtor liable." *In re Sambo's supra* at 815. Some courts further hold that if the critical documents are not a part of the court's file, an intention to file with the court must have been present. *Evanston Motors, supra* at 1031–1032.

▉ The court finds that since, as noted, neither the Code nor the Rules specify the time, form or method for filing requests for payment of administrative expenses, a written document, filed with the court, stating the nature and the amount of the claim, and evidencing an intent to hold the estate liable is sufficient to constitute a request for payment under Section 503 of the Bankruptcy Code. The court believes that if a document or documents meet the detailed guidelines outlined in the Bankruptcy Rules for proofs of claim, which are prima facie valid, it cannot demand more for a request for payment of an administrative expense, which is subject to court scrutiny and approval. The court finds that the April 6, 1984 proof of claim satisfies all of these requirements. To hold otherwise would exalt form over substance and would be inequitable under the facts presented.

▉ The Treasurer's August 12, 1986 request for payment as an administrative expense includes personal property tax liabilities as well as 1984 real estate taxes, nei-

ther of which are contained in the April 6, 1984 proof of claim. The issue then becomes whether the August 12, 1986 request for payment is allowable as an amendment of the earlier request and, if not, whether leave should be granted to file an additional request. Whether the request is construed as an amendment of that claim, or if leave to file is necessary, several factual issues arise (e.g., whether allowance would unduly prejudice the Trustees) and, accordingly, summary judgment is inappropriate.

▉ Finally, to expedite matters, the court will dispose of issues raised by the Treasurer regarding the sufficiency of notice of the bar date and the priority status of interest accrued on post-petition taxes. The Treasurer argues that he did not receive the December 30, 1985 order establishing the bar date and further argues that his attorney, the county prosecutor, should have been notified. The Treasurer attaches to his brief an affidavit of the deputy, Nancy Metcalf, who handles bankruptcy matters in the Treasurer's office. The affidavit states in relevant part:

> I do not believe the Treasurer ever received a December 30, 1985 order from the Court confirming the plan proposed by the Trustees. I do not recall ever seeing the document, and I do not have the document in the file I maintain for all documents received in this office on the MTR bankruptcy case.

The court does not dispute Ms. Metcalf's assertions for the simple reason that the December 30, 1985 order was not sent to the Treasurer or any other creditor. Notice of confirmation and of the administrative bar date was sent separately by the court on January 24, 1986 after the court had entered an order extending the bar date until March 1, 1986. No allegation is made by the Treasurer that this notice was not received and accordingly this argument must fail.

The Treasurer's second argument relies on the fact that its counsel was not served with notice of the bar date. Bankruptcy Rule 2002(g) expressly states:

All notices required to be mailed under this rule to a creditor, equity security holder, or indenture trustee shall be addressed as he or his authorized agent may direct in a request filed with the court; otherwise, to the addresses shown in the list of creditors or the schedule whichever is filed later, but if a different address is stated in a proof of claim duly filed, that address shall be used.

No such request was filed nor was any other address than that of the courthouse indicated on the proofs of claim. Therefore, the court finds that the Treasurer's second argument is also without merit.

■ Lastly, the Treasurer asserts that interest accrued on post-petition taxes qualify as administrative expenses under Section 503(b)(1)(C) of the Bankruptcy Code. The courts are split on the issue, but this court has expressly found to the contrary. *In re Lumara Foods of America, Inc.*, 50 B.R. 809 (Bankr.N.D.Ohio 1985); *See also, In re Hirsch-Franklin, Enterprises, Inc.*, 63 B.R. 864 (Bankr.M.D.Ga.1986); *In re Stack Steel & Supply Co.*, 28 B.R. 151 (Bankr.W.D.Wash.1983); *but see, In re Friendship College, Inc.*, 737 F.2d 430 (4th Cir.1984); *In re Razorback Ready-Mix Concrete Co.*, 45 B.R. 917 (Bankr.E.D.Ark. 1984). The court is not persuaded by the Treasurer's arguments to alter its prior holding and concludes that the interest accrued on the post-petition taxes is not recoverable as an administrative expense under Section 503(b)(1)(C).

### CONCLUSION

Based upon the foregoing analysis, the court finds that the April 6, 1984 proof of claim filed on behalf of the Treasurer pertains only to post-petition liabilities and must be disallowed as a proof of claim. The court further finds that the April 6, 1984 proof of claim constitutes a timely filed request for payment of an administrative expense under Section 503 of the Bankruptcy Code. The court concludes that interest accrued on post-petition taxes is not an administrative expense under Section 503(b)(1)(C) of the Bankruptcy Code. Finally, the court finds that an evidentiary hearing is necessary to resolve the remaining issues of whether the penalties imposed by the Treasurer on the 1979 personal property taxes qualify for priority status under Section 507(a)(7)(G) of the Bankruptcy Code under the analysis set forth in *In re Unimet Corp., supra;* the amount of the Treasurer's claims; whether the August 12, 1986 request for payment is an amendment of the April 6, 1984 timely filed request for payment of administrative expense; and, if not, whether leave to file a request for administrative expense is appropriate.

An order consistent herewith shall issue.